UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

JENNETTE ROLLSTON,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

                                /

Case No.  1:16-CV-168

HON. GORDON J. QUIST

## **OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Jennette Rollston seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

**STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was thirty-two years of age on the date of the ALJ's decision. (PageID.41, 231.) She previously had obtained a GED, and had been employed as a bagger, cashier, deli worker, and pet groomer. (PageID.234, 247.) Plaintiff applied for benefits on November 15, 2012, alleging that she had been disabled since September 30, 2005, due to severe anxiety, back pain due to large breast, carpal tunnel syndrome, manic depression / bipolar disorder, cyclothymia, a learning disability, and emotional trauma. (PageID.107, 121, 205–213.) Plaintiff's applications were denied on August 5, 2013, after which time she requested a hearing before an ALJ. (PageID.138–146.) On March 12, 2015, Plaintiff appeared with her counsel before ALJ Mark Kim for an administrative hearing at which time both Plaintiff and a vocational expert (VE) testified. (PageID.70–105.) On

May 1, 2015, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. (PageID.41–69.) On December 22, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.29–34.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the

---

[1]
1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

3

Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Kim determined that Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (PageID.46.) At step two, the ALJ determined that Plaintiff had the following severe impairments: (1) degenerative disc disease; (2) carpal tunnel syndrome; (3) obesity; (4) affective disorders; and (5) personality disorder. (PageID.46.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.48–51.) At the fourth step, the ALJ determined that Plaintiff retained the RFC based on all the impairments:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant must alternate from sitting or standing every 30 minutes while staying on task. She can frequently kneel, crouch, and feel with both hands; occasionally climb ramps and stairs, stoop, and handle and finger with both hands; and never crawl or climb ladders, ropes, or scaffolds. The claimant must avoid exposure to excessive vibration and hazards, such as moving machinery and unprotected heights. The claimant is limited to simple, routine, repetitive tasks. Her work must be low stress, defined as only occasional job-related decision-making and only occasional changes in the work setting. Her work can have no production rate or pace work. She can have only occasional interaction with coworkers. The claimant can have no interaction with the public.

(PageID.51.) Continuing with the fourth step, the ALJ determined that Plaintiff's past jobs did not amount to past relevant work. (PageID.62.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform other work as a surveillance system monitor, with seventeen thousand positions existing in the national economy. (PageID.99–100.) Based on this record, the ALJ found that Plaintiff was

4

capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.63.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from September 30, 2005, through May 1, 2015. (PageID.63.)

## DISCUSSION

The sole issue in this case is whether the Commissioner's step five burden has been met. As noted above, at step five of the sequential evaluation, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that can accommodate Plaintiff's residual functional and vocational profile. *Jones*, 336 F.3d at 474. The ALJ found that Plaintiff was not disabled, asserting she could perform work that exists in significant numbers in the national economy. (PageID.63.) The ALJ was required to support this conclusion with substantial evidence that the claimant had the vocational qualifications to perform specific jobs. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987). In doing so, the ALJ relied on the testimony of the VE, who identified seventeen thousand surveillance system monitor positions in response to the ALJ's hypothetical question. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004). Plaintiff contends that the positions identified by the ALJ do not constitute a significant number of jobs for purposes of determining whether other work exists in the national economy at step five of the sequential evaluation.

The regulation which explains the term "Work which exists in the national economy" provides as follows:

> (a) General. We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether—

5

> (1) Work exists in the immediate area in which you live;
>
> (2) A specific job vacancy exists for you; or
>
> (3) You would be hired if you applied for work.
>
> (b) How we determine the existence of work. Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy. We will not deny you disability benefits on the basis of the existence of these kinds of jobs. If work that you can do does not exist in the national economy, we will determine that you are disabled. However, if work that you can do does exist in the national economy, we will determine that you are not disabled.

20 C.F.R. §§ 404.1566, 416.966. In the often-cited decision in *Hall v. Bowen*, 837 F.2d 272 (6th Cir. 1988), the Sixth Circuit addressed how a court should evaluate whether a significant number of jobs exist under the regulations. In reaching its determination, the court observed that there is no "magic number" that represents a significant number of jobs, and that "[t]he decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.* at 275. The judge may consider factors such as: the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; and the types and availability of such work. *Id.*

The gravamen of Plaintiff's argument is that the ALJ could not rely on the VE's testimony that Plaintiff could perform the position of surveillance system monitor. She notes that the description of that job as contained in the dictionary of occupational titles (DOT) has not been updated in some time, and argues that to rely on outdated information is in direct conflict with the

6

Sixth Circuit's holding in *Cunningham v. Astrue*, 360 F. App'x 606 (6th Cir. 2010). (PageID.994.) She further argues that the ALJ and VE should have relied on the more recent Occupational Information Network (O*NET). (PageID.996.)

In *Cunningham*, the plaintiff died while his lawsuit challenging the Commissioner's decision denying his application for DIB benefits was pending. The ALJ found the claimant's application failed at the fifth step of the sequential evaluation, concluding that he could have performed the jobs of document preparer and security camera monitor. 360 F. App'x at 610. A divided panel, noting the DOT had not been recently updated and that descriptions of the positions were not found in more recent publications, found the record was "insufficient to address Cunningham's claim" and remanded the matter for further administrative proceedings. *Id.* at 615. Specifically, the court stated that "the VE's dependence on the DOT listings alone does not warrant a presumption of reliability." *Id.* at 616. The Commissioner argues that the VE in the instant case did not depend only on the DOT description, and cites the following exchange between the VE and Plaintiff's representative during the administrative hearing:

> Q   The surveillance system monitor – can you describe the duties of that job to me?
>
> A   I can. I've actually seen the job, doing that. What I observed as a room with, essentially, screens. The person could sit or stand, as long as they – were within visual distance from the screen.
>
> If any – if there was anything detected amiss, then it was making a phone call or pushing a button to alert police or security.
>
> Q   And where have you seen this job being performed?
>
> A   Stanley Alarm, Bay City.
>
> Q   Okay. Any place else, besides Stanley Alarm in Bay City?
>
> A   No.

7

    Q    So would you say that job is prevalent in the Michigan economy?

    A    According to our statistics – and again, I was giving national numbers, okay, because that's what the Judge was –

    Q    Uh-huh.

    A    – asking for – in Michigan, the region, --

    Q    Correct.

    A    – our most recent statistics indicate that there are approximately 400 of those occurring –

    Q    In the –

    A    – in the state.

    Q    – in the entire state of Michigan.

    A    Correct.

(PageID.101–102.) The Commissioner argues this was sufficient to distinguish *Cunningham*, and satisfy her step five burden.

As decisions in this district have held, *Cunningham* "did not declare that the job of security monitor was unreliable or obsolete." *Hayes v. Comm'r of Soc. Sec.*, No. 1:09-cv-1107, 2011 WL 2633945, at *12 (W.D. Mich. June 15, 2011) *report and recommendation adopted*, 2011 WL 2633849 (W.D. Mich. July 5, 2011); *see also Duong v. Comm'r of Soc. Sec.*, No. 1:15-CV-1206, 2016 WL 5423483, at *5 (W.D. Mich. Sept. 29, 2016). However, as *Cunningham* dictates, the record must be sufficient to satisfy the Commissioner's step five burden. Importantly, both in *Hayes* and in *Duong,* the VE was able to provide other positions that, standing alone, amounted to a significant number of jobs. Here, the VE identified only the surveillance system monitor position. The Court finds the record cannot satisfy the Commissioner's burden. The VE's testimony that she visited a single facility on an unspecified date does not alleviate the concern raised by the

8

*Cunningham* court. Importantly, the VE did not testify whether the job she witnessed was representative of the position as it was currently being performed.

While the Court finds the record is insufficient as to step five, the Court disagrees with Plaintiff's assertion that the ALJ and VE should have relied on the O*NET instead of the DOT. O*NET is an online database that was developed by the North Carolina Department of Commerce through a grant by the United States Department of Labor. *O*Net Resource Center,* O*NET ONLINE, http://www.onetcenter.org/overview.html (last visited Oct. 24, 2016). Its website states that it is "the nation's primary source of occupational information." *Id.* However, while the DOT appears on the list of publications from which the agency can take "administrative notice of reliable job information," the O*NET does not. *See* 20 C.F.R. §§ 404.1566(d)(1)-(5), 416.966(d)(1)-(5). The ALJ was not required to accept the occupational information contained in the "O*NET Online" or any particular source. Under the regulations, an ALJ is authorized "to use a vocational expert or other specialist" and to "take administrative notice of reliable job information available from governmental and other publications." 20 C.F.R. §§ 404.1566(d)-(e), 416.966(d)-(e). Accordingly, the failure to consult the O*NET does not constitute error.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **REVERSED** and this matter is **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate the step five finding.

Dated: November 1, 2016                  /s/ Gordon J. Quist
                                                               GORDON J. QUIST
                                                           UNITED STATES DISTRICT JUDGE